IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

RICHARD SPEAR                                                                              PLAINTIFF

V.                                          NO. 15-5126

CAROLYN W. COLVIN,
Acting Commissioner of the Social Security Administration                DEFENDANT

**MEMORANDUM OPINION**

Plaintiff, Richard Spear, brings this action pursuant to 42 U.S.C. §405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for a period of disability and disability insurance benefits (DIB) and supplemental security income benefits (SSI) under the provisions of Titles II and XVI of the Social Security Act (Act). In this judicial review, the Court must determine whether there is substantial evidence in the administrative record to support the Commissioner's decision. See 42 U.S.C. §405(g).

**I. Procedural Background:**

Plaintiff filed his original application for DIB and SSI benefits in 2007, claiming disability beginning August 2, 2005. (Tr. 39-51, 303-304, 425-435).[1] On July 21, 2010, the undersigned entered a Report and Recommendation, which was adopted by United States District Judge Jimm Larry Hendren on August 24, 2010, remanding the matter to the ALJ to conduct further administrative proceedings. (Tr. 303, 323). Spear v. Colvin, No. 09-5142 (Docs. 11, 12). After conducting a hearing on July 23, 2013, by written decision dated October 24, 2013, the ALJ found that during the relevant time period, Plaintiff had an impairment or combination of impairments that were severe – degenerative disk disease of

---

[1] Plaintiff filed subsequent applications, which were also denied and were also associated with the original applications. (Tr. 303).

1

the lumbar spine, bulging disks at L4-L5 and L5-S1 and mood disorder. (Tr. 307). However, after reviewing all of the evidence presented, the ALJ determined that Plaintiff's impairments did not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 307). The ALJ found Plaintiff retained the residual functional capacity (RFC) to:

> perform sedentary work as defined in 20 CFR 404.1567(a) and 416.967(a) except that he can only do work with simple tasks and simple instructions and can have only incidental contact with the public.

(Tr. 309). With the help of the vocational expert (VE), the ALJ determined that during the relevant time period, Plaintiff would not be able to perform his past relevant work, but there were jobs Plaintiff would be able to perform, such as machine tender and assembler. (Tr. 318-319).

Plaintiff then requested a review of the hearing decision by the Appeals Council, which denied that request on April 23, 2015. (Tr. 281). Subsequently, Plaintiff filed this action. (Doc. 1). This case is before the undersigned pursuant to the consent of the parties. (Doc. 6). Both parties have filed appeal briefs, and the case is now ready for decision. (Docs. 14, 16).

The Court refers to the "Evidence Presented" portion of the Report and Recommendation in Spear, No. 09-5142 (pp. 2-12), which covers the period of time from 1999 to March 25, 2009, the date of the previous unfavorable ALJ decision. In that Report and Recommendation, the undersigned remanded the matter to the ALJ, with instructions to obtain x-rays, MRIs or CT scans of Plaintiff's back, and to obtain another RFC assessment from another examining physician. The undersigned also remanded the matter to the ALJ in order for him to obtain a Mental RFC assessment from Dr. Ester Salvador at OGI, and to

2

then re-evaluate Plaintiff's impairments in light of the new mental and physical RFC assessments.

Subsequent to the March 25, 2009 decision, Plaintiff underwent a General Physical Examination by Dr. Kenneth M. Poemoceah on June 11, 2009. (Tr. 676). Dr. Poemoceah found Plaintiff had normal range of motion in his extremities and spine. (Tr. 679). Plaintiff was also able to tandem walk, perform all limb functions, and had 100% normal grip in both of his hands. (Tr. 680-681). No limitations were imposed. (Tr. 681). On June 15, 2009, non-examining physician, Dr. Jim Takach, completed a Physical RFC Assessment, finding Plaintiff would be able to perform light work with certain postural limitations. (Tr. 686-697).

On July 3, 2009, a Mental Diagnostic Evaluation was performed by Terry L. Efird, Ph.D. (Tr. 694). Dr. Efird noted that Plaintiff reported having received outpatient mental health services from around 2006-2008, and denied being prescribed psychiatric medication at the time of the evaluation. (Tr. 695). Plaintiff reported to Dr. Efird that he only bathed about once or twice a week, and could perform household chores adequately, although some degree of physical difficulties was described. (Tr. 695). Plaintiff also reported to Dr. Efird that he served in the military for about six months in 1991, and went AWOL. (Tr. 695). Dr. Efird concluded that the case presented a degree of difficulty making a distinct differential diagnosis, as Plaintiff had received a diagnosis of bipolar disorder, with psychosis, based upon the records reviewed. (Tr. 697). Dr. Efird found Plaintiff was unclear about periods of a manic episode, and a diagnosis of psychotic disorder NOS was therefore offered. (Tr. 697). Dr. Efird diagnosed Plaintiff as follows:

      Axis I:        Psychotic disorder, NOS
      Axis II:      deferred
      Axis V:      45-55

3

(Tr. 697). Dr. Efird further found that Plaintiff communicated and interacted in a fairly basic, but reasonably socially adequate manner; communicated in a fairly basic, but reasonably intelligible and effective manner; had the capacity to perform basic cognitive tasks required for basic work like activities; was able to track and respond adequately for the purposes of the evaluation; generally completed most tasks during the evaluation and completed most tasks within probably a below average time frame. (Tr. 697-698).

On July 16, 2009, a Mental RFC Assessment was completed by non-examining consultant, Brad F. Williams. (Tr. 716). Mr. Williams concluded that Plaintiff was able to perform work where interpersonal contact was incidental to work performed, e.g. assembly work; where complexity of tasks was learned and performed by rote, with few variables, and little judgment; and where supervision required was simple, direct and concrete (unskilled). (Tr. 718).

On August 25 and 26, 2009, Case Analyses were completed by Kay Cogbill and Dr. Bill F. Payne, respectively, wherein they affirmed the assessments of July 16, 2009, and June 15, 2009. (Tr. 726-727).

On March 8, 2010, Plaintiff saw his treating physician, Dr. David J. Tucker, who reported that Plaintiff had diffuse lower lumbar tenderness and lower thoracic tenderness, and that there was markedly decreased range of motion, with decreased flexion and extension of the spine. (Tr. 733). He concluded that Plaintiff's x-rays showed marked degenerative disc disease of the upper lumbar spine with less disease at other levels, and that there was significant degenerative joint disease of the facet joints in the lumbar region, as well as anterior and posterior spurring. (Tr. 733). Dr. Tucker concluded that Plaintiff was "markedly restricted" on his physical activities. (Tr. 733).

Plaintiff began seeing physicians at the Community Clinic on July 18, 2012, where he saw Dr. Leslie Stone. (Tr. 931). At that time, he was reported as being obese, sedentary, and a smoker. (Tr. 931). He was diagnosed with chest pain, nos, obesity, nos, lower back pain, and tobacco use disorder. (Tr. 931). Plaintiff saw Dr. Stone again on August 8, 2012, for follow-up, and it was noted that he smoked 31 or more cigarettes per day, and was thinking about quitting. (Tr. 929). Plaintiff was then assessed with hypercholesterolemia, obesity, nos, tobacco use disorder, impaired fasting glucose, and leukocytosis, nos. (Tr. 930).

On September 19, 2012, Dr. Tucker recommended Plaintiff have a MRI, as he was complaining of low back pain, radiating into both legs at times. (Tr. 1002). The MRI was performed on October 3, 2012, which revealed the following:

1. Small broad based left posterior paracentral disc protrusion, L5-S1
2. Mild diffuse lumbar degenerative disc disease with more prominent discogenic changes at L5-S1
3. Mild bilateral neural foraminal stenosis, L4-5
4. Mild L5-S1 facet joint arthrosis

(Tr. 960).

Plaintiff presented himself to Ozark Guidance Center (OGC) on October 10, 2012, complaining that he was seeing cartoon characters, and talking to Yosemite Sam. (Tr. 974). He also reported that killing was in his mind all of the time, and that Sam was very aggressive. (Tr. 974). Plaintiff was diagnosed as follows:

| | |
|---|---|
| Axis I: | Bipolar I Manic Ep Severe W Psychotic – Mixed |
| | R/O Schizophrenia |
| Axis II: | No diagnosis |
| | R/O Avoidant Personality Disorder |
| Axis III: | Generalized pain |
| | Other organic sleep apnea |
| | Backache unspecified |
| Axis IV: | Problems related to Social Environment, Educational Problems, Problems with access to Health Care, Economic problems |

5

      Axis V:        41

(Tr. 976).

On November 19, 2012, Dr. Tucker wrote a letter, stating that because of Plaintiff's physical problems, he would be unable to perform significant physical activity, could do no activities which required any amount of bending, lifting, pushing or pulling, and would be restricted to purely sedentary activities and then must frequently change position, probably having to get up to move around to relieve back pain and problems several times an hour. (Tr. 959).

On January 8, 2013, Dr. Joseph M. Ricciardi conducted a physical examination of Plaintiff at the request of the Social Security Administration. (Tr. 987). Dr. Ricciardi noted that Plaintiff smoked one and a half to two packs of cigarettes per day and had smoked up to three to four packs per day in the past. (Tr. 988). He found that both sacroiliac joints were tender to palpation, bilateral lower extremity muscle testing was 5/5 throughout, and the Achilles and patellar reflexes were 1+ bilaterally. Plaintiff demonstrated the ability to ambulate forward, heel walk, toe walk, and tandem walk. (Tr. 988). In attempting to squat, Plaintiff was able to get into a position of 70 degrees each of hip and knee flexion. Plaintiff's lumbar range of motion was measured at 55 degrees of flexion and 30 degrees of extension, with 40 degrees each of left and right lateral flexion. (Tr. 988). Dr. Ricciardi reported that the MRI performed on October 3, 2012, revealed a small broad-based left posterior paracentral disc protrusion at the lumbosacral level and mild diffuse lumbar degenerative disc disease with more prominent discogenic changes at the L5-S1 level, and there was mild bilateral neural foraminal stenosis at the L4-L5 level and mild L5-S1 facet joint arthrosis. (Tr. 988). Dr. Ricciardi assigned Plaintiff an impairment rating of 6%, and concluded that Plaintiff

could be considered for sedentary work if frequent changes of body position were possible. (Tr. 989). He further opined that Plaintiff should not be doing any lifting, carrying, pushing or pulling greater than 5 pounds unless using a four wheeled tray, and should not drive a company vehicle as part of his job duties. (Tr. 989).

On January 14, 2013, Plaintiff underwent a Mental Diagnostic Evaluation by Mary J. Sonntag, Psy.D. (Tr. 993). Dr. Sonntag reported there were no pain indications during the evaluation, but that Plaintiff walked with a cane. (Tr. 994). Plaintiff admitted to Dr. Sonntag that he experienced hallucinations, but stated that he had concluded that Sam was a figment of his imagination. (Tr. 995). Dr. Sonntag reported that Plaintiff displayed symptoms of delusions that the government was observing his every move and was watching him from in front of his house. (Tr. 996). Plaintiff claimed that he had been diagnosed at OGC with bipolar, psychosis, and PTSD. However, when Dr. Sonntag asked him about the symptoms in further detail, Plaintiff refused to talk about them. (Tr. 996). Dr. Sonntag noted that Plaintiff's speech was organized and he had appropriate affect. She opined that in the absence of other documentation from OGC, and the fact that he had not consulted with another physician or mental health professionals with his serious symptoms, "it seems highly probable that Plaintiff could be malingering." (Tr. 996) She also proposed "rule-out" diagnoses, and diagnosed Plaintiff as follows:

      Axis I:        No diagnosis or possibly malingering
      Axis II:      No diagnosis
      Axis V:      GAF – 62

(Tr. 996). Dr. Sonntag found that Plaintiff was capable of performing activities of daily living independently, attended school programs for his granddaughter and grandson; communicated and interacted in a socially adequate manner; spoke intelligibly and

effectively; and had no difficulty in the evaluation office. (Tr. 996-997). Dr. Sonntag concluded that Plaintiff's overall presentation, i.e., "affect, speech, and etc.," did not seem to support the symptoms he reported, and when asked for specific symptoms of mood cycles and PTSD, he did not want to talk about them. Without the documentation from OGC, a possible malingering diagnosis was proposed. (Tr. 997).

On May 21, 2013, Plaintiff reported to Vicki Moore, APN, at Community Clinic, that he was swelling all over, and had difficulty breathing. (Tr. 1015). Plaintiff reported that he quit smoking in February, and smoked electronic cigarettes two to three times a week with just water vapor. (Tr. 1015). Plaintiff was diagnosed with edema and hyperlipidemia, nos. (Tr. 1016). On June 18, 2013, Plaintiff saw Dr. Stone at the Community Clinic, complaining of weakness and blackouts. (Tr. 1025). Dr. Stone assessed Plaintiff with edema, anemia, nos, hypercholesterolemia, and dizziness. (Tr. 1026). Plaintiff presented to Mercy Hospital Northwest on June 20, 2013, complaining of chest pain and a headache. (Tr. 1032). An x-ray of Plaintiff's chest revealed no acute cardiopulmonary process, and a CT of Plaintiff's head was negative. (Tr. 1040).

Plaintiff saw Dr. Stone on July 2, 2013, for lab results, and was assessed with hyperglycemia, anemia, nos, hyperlipidemia, nos, edema, and abnormal liver function study. (Tr. 1028).

## II.   Applicable Law:

This Court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. Ramirez v. Barnhart, 292 F. 3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's

8

decision must be affirmed if the record contains substantial evidence to support it. Edwards v. Barnhart, 314 F. 3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the Court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the Court would have decided the case differently. Haley v. Massanari, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record, it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. Young v. Apfel, 221 F. 3d 1065, 1068 (8th Cir. 2000).

It is well established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. Pearsall v. Massanari, 274 F. 3d 1211, 1217 (8th Cir. 2001); see also 42 U.S.C. §423(d)(1)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§423(d)(3). A Plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant had engaged in substantial gainful activity since filing his claim; (2) whether the claimant had a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) met or equaled an impairment in the listings; (4) whether the impairment(s)

prevented the claimant from doing past relevant work; and (5) whether the claimant was able to perform other work in the national economy given his age, education, and experience. See 20 C.F.R. §§404.1520, 416.920  Only if the final stage is reached does the fact finder consider the Plaintiff's age, education, and work experience in light of his RFC. See McCoy v. Schneider, 683 F.2d 1138, 1141-42 (8th Cir. 1982);  20 C.F.R. §§404.1520, 416.920, abrogated on other grounds by Higgins v. Apfel, 222 F.3d 504, 505 (8th Cir. 2000); 20 C.F.R. §§404.1520, 416.920.

### III. Discussion:

Plaintiff raises the following issues in this matter: 1) Whether the ALJ erred in according little weight and rejecting numerous opinions from Plaintiff's treating physician, Dr. Tucker; 2) Whether the ALJ improperly discredited the opinions of Dr. Ricciardi; 3) Whether the ALJ erred in his RFC determination; 4) Whether the ALJ erred in failing to consider Plaintiff's sleep apnea as a severe or non-severe impairment; and 5) Whether the ALJ failed to follow the Appeals Council remand order. (Doc. 14).

The Court will first address Plaintiff's argument relating to Plaintiff's severe impairments, and then address the first three arguments in its discussion of RFC and weight the ALJ gave to the various opinions.

#### A. **Severe Impairment**:

An impairment is severe within the meaning of the regulations if it significantly limits an individual's ability to perform basic work activities. 20 C.F.R. § 1520(a)(4)ii).  An impairment or combination of impairments is not severe when medical and other evidence establish only a slight abnormality or a combination of slight abnormalities that would have no more than a minimal effect on an individual's ability to work.  20 C.F.R. § 404.1521. The

Supreme Court has adopted a "de minimis standard" with regard to the severity standard. Hudson v. Bowen**,** 870 F.2d 1392, 1395 (8th Cir. 1989). "While '[s]everity is not an onerous requirement for the claimant to meet …it is also not a toothless standard.'" Wright v. Colvin, 789 F.3d 847, 855 (8th Cir. 2015)(quoting Kirby v. Astrue, 500 F.l3d 705, 708 (8th Cir. 2007)).

In his decision, the ALJ found Plaintiff's severe impairments to be degenerative disc disease of the lumbar spine, bulging disks at L4-L5 and L5-S1 and mood disorder. (Tr. 307). Plaintiff argues that the ALJ failed to consider Plaintiff's sleep apnea as a severe or non-severe impairment. It is not disputed that Plaintiff uses a CPAP machine at night. However, it is noteworthy that Plaintiff worked through 2009, helping his wife with a paper route, and his sleep apnea did not prevent him from working. (Tr. 1116). Although Plaintiff indicated that his CPAP did not work well, the records do not indicate he voiced this concern to his physicians. In addition, the ALJ noted that Plaintiff did not rest well and would wake up with nightmares, so it is apparent the ALJ considered Plaintiff's alleged sleeping problems.

Finally, where the ALJ finds at least one "severe" impairment and proceeds to assess claimant's RFC based on all alleged impairments, as the ALJ did in this case, any error in failing to identify a particular impairment as "severe" at step two is harmless. Swartz v. Barnhart, 188 Fed. Appx. 361, 388 (6th Cir. 2006); Elmore v. Astrue, 2012 WL 1085487 at *12 (E.D. Mo. Mar. 5, 2012).

### B.  RFC Determination and Weight Given to Physicians:

Plaintiff alleges that the ALJ erred in giving little weight to Dr. Tucker's opinions, improperly discrediting Dr. Ricciardi's opinions, and that the ALJ's RFC assessment is not supported by substantial evidence.

11

RFC is the most a person can do despite that person's limitations. 20 C.F.R. § 404.1545(a)(1). It is assessed using all relevant evidence in the record. Id. This includes medical records, observations of treating physicians and others, and the claimant's own descriptions of his limitations. Gilliam's v. Barnhart, 3 93 F.3d 798, 801 (8th Cir. 2005); Eichelberger v. Barnhart, 390 F.3d 584, 591 (8th Cir. 2004). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 404.1545(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." Lauer v. Apfel, 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace. Lewis v. Barnhart, 353 F.3d 642, 646 (8th Cir. 2003). "[T]he ALJ is [also] required to set forth specifically a claimant's limitations and to determine how those limitations affect his RFC." Id. "The ALJ is permitted to base its RFC determination on 'a non-examining physician's opinion *and* other medical evidence in the record.'" Barrows v. Colvin, No. C 13-4087-MWB, 2015 WL 1510159 at *11 (N.D. Iowa Mar. 31, 2015)(quoting from Willms v. Colvin, Civil No. 12-2871, 2013 WL 6230346 (D. Minn. Dec. 2, 2013)).

With respect to the weight given to the opinions of treating physicians, "[a] claimant's treating physician's opinion will generally be given controlling weight, but it must be supported by medically acceptable clinical and diagnostic techniques, and must be consistent with other substantial evidence in the record." Andrews v. Colvin, No. 14-3012, 2015 WL 4032122 at *3 (8th Cir. July 2, 2015)(citing Cline v. Colvin, 771 F.3d 1098, 1102 (8th Cir. 2014)). "A treating physician's opinion may be discounted or entirely disregarded 'where other medical assessments are supported by better or more thorough medical

evidence, or where a treating physician renders inconsistent opinions that undermine the credibility of such opinions.'" Id. "In either case-whether granting a treating physician's opinion substantial or little weight-the Commissioner or the ALJ must give good reasons for the weight apportioned." Id.

With respect to Dr. Tucker's opinions, the ALJ addressed Dr. Tucker's medical source statement dated June 21, 2008, where Dr. Tucker opined that Plaintiff could occasionally lift and carry 20 pounds occasionally and 15 pounds frequently, and could stand and walk for four hours during an eight-hour day, and that Plaintiff could only occasionally climb, kneel, balance, crawl and could not crouch. (Tr. 315). The ALJ gave those opinions substantial weight. (Tr. 315). With respect to Dr. Tucker's opinion that Plaintiff could not sit for more than four hours during an eight-hour day and could not stoop, the ALJ gave those opinions little weight, because he found Plaintiff's testimony and written statements showed him engaged in activities that would require him to stoop at least occasionally, such as helping with his wife's paper route and performing some household chores. (Tr. 315). The ALJ also concluded that Dr. Tucker's own records did not support those conclusions, because he did not recommend that Plaintiff limit his activities. (Tr. 315). With respect to Dr. Tucker's opinion that Plaintiff had low back pain and difficulty with bending, lifting and twisting, the ALJ found that his RFC took them into account with the finding that Plaintiff could perform work at the sedentary exertional level, and that to the extent they were offered to show that Plaintiff had greater limitations, they were given little weight. The ALJ also found that Dr. Tucker's opinion on March 8, 2010, that Plaintiff had a markedly decreased range of motion and decreased flexion and extension of the lumbar spine, was taken into account by limiting Plaintiff to sedentary work. He found Dr. Tucker's statement that

13

Plaintiff suffered from marked limitations was given little weight to the extent that Plaintiff had greater limitations than the ability to perform sedentary work. (Tr. 316). The ALJ next gave Dr. Tucker's June 23, 2008 progress note discounted weight, noting that Plaintiff's testimony and written statements showed that such limitation was not supported by his subjective complaints. (Tr. 316). The ALJ gave Dr. Tucker's letter dated April 22, 2010, little weight, because he did not express any opinions about how the conditions limited Plaintiff's ability to do work like tasks. (Tr. 316). Regarding Dr. Tucker's September 9, 2012 treatment note and his November 19, 2012 letter, the ALJ discounted those opinions because Plaintiff continued to work on a paper route after his alleged onset date, because Dr. Tucker's opinion was based on Plaintiff's subjective complaints, and because the testimony and written statements showed Plaintiff was not as limited as alleged. (Tr. 316).

With respect to Dr. Ricciardi's opinions, the ALJ noted the doctor's opinion that Plaintiff could be considered for sedentary work if frequent changes of body position were possible, and that Plaintiff could not do any lifting, pushing or pulling greater than five pounds unless he used a four-wheeled tray, and could not drive a company vehicle as a part of work. (Tr. 317). The ALJ gave Dr. Ricciardi's opinion credit, but gave little weight to Dr. Ricciardi's opinion that Plaintiff could not lift, carry, push or pull more than five pounds unless using a four-wheeled tray, because he found they were inconsistent with the type of activities Plaintiff described in his testimony and written statements. (Tr. 317).

As indicated earlier, Plaintiff helped his wife's paper route until 2009, and testified that he washed dishes, got on the computer and checked online to see what was going on, watched television, and mowed his three-acre yard, although it took him about three days. (Tr. 1124-1125). In addition, in 2008, Plaintiff told Audrey Adams, LCSW, at OGC, that he

was trying to keep up his yard, worked on the house, and planned to fix up the house after he got disability back pay. (Tr. 669). It is also noteworthy that there is no evidence that Plaintiff sought treatment from Dr. Tucker from the summer of 2008 through March 2010.

The ALJ discredited the portions of Dr. Ricciardi's opinion regarding frequent changes of body position and weight limits for the same reasons his discredited portions of Dr. Tucker's opinion. (Tr. 317). The ALJ "is not required to rely entirely on a particular physician's opinion or choose between the opinions [of] any of the claimant's physicians.'" Martise v. Astrue, 641 F.3d 909, 927 (8th Cir. 2011)(quoting Schmidt v. Astrue, 496 F.3d 833, 845 (7th Cir. 2007)). In this case, the Court finds the ALJ gave sufficient reasons for giving parts of Dr. Tucker's and Dr. Ricciardi's opinions substantial weight and other parts little weight.

### C. Failure to Follow the Appeals Council Remand Order:

Plaintiff briefly argues that the ALJ failed to comply with the Appeals Council Remand Order. In its Order remanding the case to the ALJ, the Appeals Council directed the ALJ to, in pertinent part:

- Obtain updated evidence from the claimant's treating sources, including Dr. Tucker and Ozard[sic] Guidance, Inc. Such development is to include …medical source statements as to what the claimant can do despite his impairments in order to complete the administrative record in accordance with the regulatory standards regarding consultative examinations and existing medical evidence (20 CFR 404.1512-1513 and 416.912-913). The Administrative Law Judge will also obtain consultative mental status and orthopedic examinations and medical source statements.

- Obtain evidence from medical experts specializing in mental health and orthopedic medicine as to whether the claimant's impairments meet or equal the severity of an impairment listed in Appendix I, Subpart P, Regulations No. 4 and, if so at what date (20 CFR 404.1527(f) and 416.927(f) and Social Security Ruling 96-6p). The medical experts will also provide medical source statements, noting any changes which might have occurred during the period at issue and addressing any inconsistencies and/or conflicts in the medical

15

>evidence regarding the nature, severity and limiting effects of the claimant's impairments.

(Tr. 324). Subsequent to the undersigned's remand, the following documents were obtained: a General Physical Examination from Dr. Poemoceah; a Physical RFC Assessment from Dr. Takach; a Mental Diagnostic Evaluation by Dr. Efird; a Mental RFC Assessment by Brad Williams; a MRI of Plaintiff's back; a Physical Examination by Dr. Ricciardi; and a Mental Diagnostic Evaluation by Dr. Sonntag. Additional records were also obtained from Plaintiff's treating physician, Dr. Tucker.

The Court is of the opinion that the ALJ complied with the spirit of the undersigned's remand order as well as the Appeals Council Remand Order, and that Plaintiff's argument on this issue is without merit.

**IV.    Conclusion**:

Accordingly, the Court concludes that the ALJ's decision is supported by substantial evidence denying the Plaintiff benefits, and thus the decision is hereby affirmed. The Plaintiff's Complaint should be, and is hereby, dismissed with prejudice.

IT IS SO ORDERED this 12th day of January, 2017.

/s/ *Erin L. Setser*
HONORABLE ERIN L. SETSER
UNITED STATES MAGISTRATE JUDGE